# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Kayla Mantini and Michele Trezza, individually and on behalf of all others similarly situated,<br><br>           Plaintiffs,<br><br>    v.<br><br>Icelandic Provisions, Inc.<br><br>           Defendant | 7:21-cv-00618-PMH<br><br><br><br>First Amended<br>Class Action Complaint<br><br><br>Jury Trial Demanded |

Plaintiffs allege upon information and belief, except for allegations pertaining to plaintiffs, which are based on personal knowledge:

1.      Icelandic Provisions, Inc. ("defendant") markets, manufactures, labels, distributes, promotes and sells the traditional Icelandic dairy product – "skyr" – under the Icelandic Provisions brand ("Product").

I.      Origins of Skyr

2.      Skyr is a traditional "Icelandic cultured dairy product," with "the consistency of Greek yogurt, but a milder flavor."[1]

3.      The word skyr is related to the word shear (to cut), referring to how the dairy is split into the liquid whey and the thick skyr.

4.      Skyr has a slightly sour dairy flavor, with a hint of residual sweetness.

5.      Vikings originally brought skyr to Iceland from Norway and it was a critical food to sustain Icelandic settlers living just below the Arctic Circle.

---

[1] Wikipedia contributors, "Skyr," Wikipedia, The Free Encyclopedia.

6.    This is because the liquid whey was utilized to preserve meat for six months or longer.

7.    Unlike regular yogurts made with one cup of milk, a cup of skyr requires four cups.

8.    Skyr is essentially fat free (0.6 grams of fat per 100 grams), has approximately one-third less sugar than standard yogurts and is high in protein without the need for added ingredients.

II.    Consumers can Choose From Varieties of Skyr

9.    As Greek-style yogurt has matured as a category, consumer demand has stabilized and even slightly decreased.

10.    According to Bloomberg Business News, "While U.S. yogurt sales dropped 3.4 percent in the 12 months ended in February, the Icelandic style jumped 24 percent to $173.9 million, Nielsen data show."[2]

11.    According to the CEO of conglomerate General Mills, "Icelandic yogurt, [it really] follows the simply-better-for-you trend," because it is "high in protein, [and] low in sugar."

12.    Numerous companies offer their take on skyr, giving consumers, like Plaintiffs, many options.

13.    Every company except for Defendant is truthful about the origins of its skyr, describing it as "Icelandic-style," a clear indicator they are not made in Iceland.

---

[2] Leslie Patton, In the Yogurt World, the Greeks Are Down and Vikings Are Up, Bloomberg Business News, Apr. 17, 2019.

2

| **Competitor Skyr Brands** | **Descriptions** |
|---|---|
|  | Icelandic style skyr |
|  | Icelandic Style Yogurt |
|  | Icelandic Style Yogurt |



Icelandic Style Nonfat Yogurt

A Traditional, Icelandic Skyr Made in USA, Inspired by Iceland



Icelandic Style Yogurt



Icelandic Style Yogurt



Icelandic Style Skyr

 Icelandic Style Yogurt

 Icelandic Style Skyr Yogurt

 Icelandic Style Yogurt

 Icelandic Style Yogurt



Icelandic Style Yogurt

Icelandic Style

Icelandic Style Nonfat Yogurt

14.    Despite the many companies which market varieties of skyr, consumers, and Plaintiffs, purchased Defendant's skyr based on the representations they were made in Iceland.

15.    Plaintiffs did not think that any of the other skyr products were made in Iceland.

16.    Defendant is aware of consumer demand for Icelandic skyr *made* in Iceland.

17.    In response to a version of skyr that was sold in a British supermarket and manufactured in Denmark, "MS Iceland Dairies, where they really do make real Skyr," responded:

How about being honest to your consumers in the UK and tell them the truth: this is not an Icelandic skyr that you are selling in the UK. It's a yogurt that is produced in Germany and has nothing to do with the real Icelandic skyr.[3]

18.    MS Iceland Dairies is defendant's partner in producing the skyr sold to American consumers as "real Icelandic skyr."

19.    Defendant's Product is the market leader for skyr.

20.    Defendant knows that consumers associate its brand with authentic skyr which is believed to be made in Iceland.

III.    Consumer Demand for Authenticity

21.    Today's consumers are faced with increasing commercialization of products and seek brands that are genuine – whiskey from Scotland, Mexican beer from Mexico and Italian tomatoes from Italy.

22.    Consumers are willing to pay a price premium "for what they perceive to be authentic products, particularly those perceived to be authentically associated with a specific place," often where the product originated.

23.    The reasons include (1) an expectation that a product made in the location where it was first developed will be higher quality than elsewhere and (2) a desire to support and maintain local traditions and cultures at the expense of large-scale production by international conglomerates.

24.    For many consumers, "authenticity has overtaken quality as the prevailing purchasing criterion."

25.    Consumers often pay a price premium "for what they perceive to be authentic products, particularly those perceived to be authentically associated with a specific place," such as

---

[3] Iceland Defrosted Blog, *Beware of the 'Skyr'*, Sept. 24, 2015.

skyr from Iceland.

26. Consumers expect Defendant's skyr to be made in Iceland and contain the unique characteristics of skyr made there.

27. Skyr contains unique probiotics, which are thought to be a result of the Icelandic dairy cows that produce the milk used as the raw material.

28. Authentic skyr made in Iceland is made from Icelandic cows, known as a hardy breed which do not require significant amounts of food.

29. The result is production of milk with less lactose (sugar), which is a hallmark of authentic Icelandic skyr.

IV. Representations the Product is Made in Iceland

30. Defendant's marketing and advertising of the Product gives consumers the impression it is made in Iceland, including its front label representations of "Traditional Icelandic Skyr," "Icelandic Provisions" and the image of the Icelandic countryside with a snow covered backdrop.



31.    However, contrary to the Product's representations and omissions as authentic skyr, it is not made in Iceland, lacks the type and quality of ingredients historically associated with this food and is not made in the traditional methods.

32.    In addition to the front label, the side panel of the Product states:



MADE WITH
ORIGINAL SKYR CULTURES

Skyr

Protein packed Skyr ("skeer") has been a provision of Icelanders for nearly 1,000 years.

Our Skyr was developed with Iceland's oldest farmer-owned dairy.

It is the only Skyr available in the US that contains Icelandic Heirloom Skyr Cultures that Icelanders have been enjoying for centuries.

Our heirloom cultures helps make our Skyr thick, creamy and delicious.

33.    Through the statement "Made With Original Skyr Cultures," consumers will expect the Product was made in Iceland.

34.    Reasonable consumers are aware that fully processed dairy products can be transported across the world, since most have been exposed to cheeses imported from Europe.

35.    However, reasonable consumers will not expect that the raw materials for European cheeses would be shipped to the United States, then used to produce the same cheese that would have been made in Europe.

36.    By stating the Product "is the only Skyr *available* in the US that contains Icelandic Heirloom Skyr Cultures that *Icelanders have been enjoying* for centuries," consumers are misled by "available" being substituted for the more accurate word – "made." (emphasis added).

37.    These statements gave plaintiffs and consumers the impression they would be consuming the *same* skyr Defendant presumably sells to Icelanders.

38.    Defendant's website states "Halló (Hello) From Iceland" over an arctic tundra backdrop of Iceland.[6]



39.    Defendant capitalizes on its Icelandic association through a national advertising campaign filmed "on location in the coastal village of Vík," with Icelandic actors explaining skyr to American consumers.[7]

40.    The press release accompanying the rollout described the advertisements as providing viewers with "what [Defendant] consider[s] to be a snackable taste of Iceland."

41.    Defendant's CEO stated:[8]

As a company co-founded by the dairy cooperative in Iceland, MS Iceland Dairies, to bring *authentic skyr* to market in the U.S, Icelandic Provisions continues to be

---

[6] IcelandicProvisions.com.
[7] Press Release, "Icelandic Provisions says 'Halló From Iceland,' Launching Their First National Advertising Campaign," PR Newswire, Feb. 5, 2020.
[8] *Id*.

driven by our team's commitment to sharing Nordic culture. (emphasis added).

42.    However, despite Defendant's representations as to the authenticity of the Product and the purported provenance of *some* of its ingredients, it is not made in Iceland but in Batavia, New York, indicated in the fine print on the back of the Product.



43.    The back panel purports to contains the required designation of the "name and place of business of manufacturer, packer, or distributor." 21 C.F.R. § 101.5.

> DISTRIBUTED BY
> Icelandic Provisions, New York, NY
> Developed in partnership with
> MS Iceland Dairies, Reykjavik, ISL

44.    Defendant's highlighting of its partnership with "MS Iceland Dairies, Reykjavik, ISL" is misleading because it furthers the impression the Product is skyr *from* Iceland.

45.    There is no legal requirement that a company identify a partner, only that it disclose the name of the manufacturer (or distributor) and its location.

46.    By including additional information beyond what is required, consumers are misled.

47.    The presentation of the required information – "Distributed By" – causes consumers to feel confident they need not scrutinize the back of the label further for information that will disprove what they have reasonably concluded – that the Product is made in Iceland.

48.    After all, they will think, "The front states 'Icelandic Provisions' and the back indicates it is *distributed* by a New York company *with* an Icelandic dairy company, so the Product is made in Iceland then distributed in this country."

49.    Only further down at the bottom of this dense text does the label disclose "Proudly made in Batavia, NY with domestic and imported ingredients."

50.    By not including where the Product is made in greater proximity to the required name and place of business of the manufacturer or distributor, consumers are misled.

51.    Since consumers know that food and beverages – including items needing refrigeration – are commonly transported across this country, it is reasonable to expect a dairy product such as skyr can be transported by air or in cold storage on container ships and maintain its attributes.

52.    Dairy products are commonly sold in the United States that have been manufactured in Europe, such that it is reasonable to expect the same of skyr.

53.    In fact, Iceland is closer to the United States than Europe.

54.    The distance between New York City and Iceland (2,694 miles) is less than the distance between New York City and California (2,914 miles).

55.    In fact, the Product was previously made in Iceland and exported to the U.S.

56.    However, Defendant decided to produce "the skyr closer to consumers…to offer

12

more competitive prices."[9]

57.    "More competitive prices" is another way to say Defendant would reap greater profits by representing its skyr was made in Iceland even though it was made in the U.S.

58.    Plaintiffs and class members further expect that the Product is made with ingredients from Iceland, beyond just the starter cultures identified on the label.

59.    The value of the Product that plaintiffs purchased was materially less than its value as represented by defendant.

60.    Had plaintiffs and class members known the truth, they would not have bought the Product or would have paid less for it.

61.    The Product is sold for a price premium compared to other similar products, no less than $2.49 for 5.3 oz cup, higher than it would otherwise be sold for absent the misleading representations.

62.    The other varieties of skyr which are labeled as Icelandic Style cost approximately $1.59 per 5.3 oz cup, a difference attributable to the Product's representations that it is the only skyr made in Iceland.

<u>Jurisdiction and Venue</u>

63.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

64.    Plaintiff Kayla Mantini is a citizen of Pennsylvania.

65.    Defendant Icelandic Provisions, Inc. is a Delaware corporation with a principal place of business in New York, New York and is a citizen of New York.

---

[9] Staff, Iceland's largest skyr producer, the dairy MS, starts producing Icelandic skyr in the US, Mar. 29, 2017, Iceland Magazine.

66.    "Minimal diversity" exists because plaintiff Kayla Mantini and defendant are citizens of different states.

67.    Upon information and belief, sales of the Product in New York and Pennsylvania exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

68.    Venue is proper in this because a substantial part of the events or omissions giving rise to the claim occurred in this district – plaintiff Trezza's purchase of the Product.

<u>Parties</u>

69.    Plaintiff Kayla Mantini is a citizen of Hollidaysburg, Blair County, Pennsylvania.

70.    Plaintiff Michele Trezza is a citizen of Hopewell Junction, Dutchess County, New York.

71.    Defendant Icelandic Provisions, Inc. is a Delaware corporation with a principal place of business in New York, New York.

72.    Defendant is the leading seller of traditional Icelandic skyr in the United States.

73.    The Product is sold nationwide in almost all conventional grocery stores, big box stores and in specialty grocery stores in varieties including plain and berry.

74.    During the relevant statutes of limitations for each cause of action alleged, plaintiffs purchased the Product within their district and/or State in reliance on the representations of the Product.

75.    Plaintiff Mantini bought the Product – Traditional Skyr Icelandic Provisions Plain – on one or more occasions at one or more locations, including at Walmart, 2600 Plank Rd, Altoona, PA 16601, between October 21 and November 21, 2020.

76.    Plaintiff Trezza bought the Product – Traditional Skyr Icelandic Provisions Plain and/or  Blackberry Boysenberry – on one or more occasions at one or more locations, including at ShopRite, 1643 NY-82, Lagrangeville, NY 12540, between June and August 2020.

77.    Plaintiffs were presented with other varieties of skyr when they bought Defendant's product but chose Defendant's Product because the other versions of skyr indicated they were only "Icelandic Style."

78.    Plaintiffs bought the Product at or exceeding the above-referenced price because they relied upon the representations and indications of the Product's origins – literally and figuratively – in Iceland, and desired to purchase such a product.

79.    Plaintiffs would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

80.    The Product was worth less than what Plaintiffs paid for it and they would not have paid as much absent Defendant's false and misleading representations, half-truths, statements, and omissions.

81.    Plaintiffs intend to, seek to, and will purchase the Product again when they can with the assurance that the Product's representations as to its origins and ingredients will be accurate.

<u>Class Allegations</u>

82.    The classes will consist of all purchasers of the Product who reside in Pennsylvania and New York during the applicable statutes of limitations.

83.    Plaintiffs seek class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

84.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiffs and class members are entitled to damages.

85.    Plaintiffs' claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

86.   Plaintiffs are adequate representative because their interests do not conflict with other members.

87.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

88.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

89.   Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

90.   Plaintiffs seek class-wide injunctive relief because the practices continue.

<u>Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"),<br>73 P.S. §201-1 et seq. and New York General Business Law ("GBL") §§ 349 & 350<br>(Consumer Protection Statutes)</u>

91.   Plaintiffs incorporate by reference all preceding paragraphs.

92.   Plaintiffs and class members desired to purchase skyr that was made in Iceland and believed they were doing and relied on Defendant's representations, omissions and half-truths.

93.   Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

94.   Given the large variety of yogurts that are available at lower cost than the Product, plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

95.   Plaintiffs incorporate by reference all preceding paragraphs.

96.   Defendant misrepresented the Product by giving consumers the impression it was made in Iceland, even though it had a duty to consumers to be forthright in its sale of the Product.

97.   This duty is based on defendant's position, holding itself out as having special

knowledge and experience in the sale of the product type.

98.    The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

99.    Plaintiffs and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

100.    Because a large number of less expensive yogurts and other dairy products can be purchased as an alternative to the Product, plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, <i>et seq.</i></u>

101.    The Product was manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiffs and class members that it was made in Iceland and contained Icelandic ingredients in greater amounts and proportion than it did.

102.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

103.    This duty is based on Defendant's outsized role in the market for this type of Product.

104.    Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

105.    Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

106.    The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

107.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

108.   Plaintiffs incorporate by reference all preceding paragraphs.

109.   Defendant misrepresented the country of origin of the Product and that it contained the ingredients associated with a skyr from Iceland.

110.   Plaintiffs relied on that misrepresentation in purchasing the Product and other consumers did so, as well.

111.   Defendant's fraudulent intent is evinced by its failure to accurately and prominently identify the Product's place of origin – New York, instead of Iceland.

112.   Defendant included information about the Icelandic Dairies in or in proximity to the required identification of the manufacturer or distributor so as to cause consumers to believe the Product was made in Iceland, when it knew doing so would mislead consumers.

113.   If the true facts had been known, plaintiffs and class members would not have purchased the Product or paid as much, and would have purchased one of the other, less pricey domestic yogurt-type products on the market., suffering damages.

### Unjust Enrichment

114.   Plaintiffs incorporate by reference all preceding paragraphs.

115.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiffs and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiffs demand a jury trial on all issues.

**WHEREFORE**, Plaintiffs pray for judgment:

1. Declaring this a proper class action, certifying plaintiffs as representatives and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   June 4, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
_____
Spencer Sheehan
60 Cutter Mill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
*spencer@spencersheehan.com*


Reese LLP
Michael R. Reese
100 W 93rd St Fl 16

New York NY 10025-7524
Tel: (212) 643-0500
Fax: (212) 253-4272
*mreese@reesellp.com*